UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID SILVA, JR., #235123                    Case No. 2:22-cv-20

             Plaintiff,                    Hon. Jane M. Beckering
                                             U.S. District Judge

    v.

ERICA HUSS, at al.,

             Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 20.)

Plaintiff — state prisoner David Silva, Jr.  — filed suit pursuant to 42 U.S.C. § 1983 on January 31, 2022.  In his verified complaint, Silva claimed that while he was incarcerated at the Marquette Branch Prison (MBP) in Marquette, Michigan, five MBP employees[1] failed to protect him from exposure to the Covid-19 virus.  (ECF No. 1, PageID.2-8.)  More specifically, Silva alleged that Defendants failed to adhere to the Covid-19 protocol established by the Michigan Department of Corrections

---

[1]    The MBP employees are: (1) Warden Erica Huss, (2) Deputy Warden (DW) Doug Tasson, (3) Assistant Deputy Warden (ADW) Tim Dahl, (4) Resident Unit Manager (RUM) Unknown Erickson, and (5) Prison Counselor (PC) Unknown Johnson.

(MDOC) and instead co-mingled prisoners who had tested positive for Covid-19 and those who had not.  (*Id.*)  Silva said that Defendants' failure to adhere to MDOC protocol ultimately led him to contract the virus.  (*Id.*, PageID.4.)

Defendants now move for summary judgment, arguing that Silva did not properly exhaust his administrative remedies.  (ECF No. 20.)  More specifically, Defendants assert that Silva had to exhaust his claims through the MDOC's grievance process prior to filing suit, and that he did not.  (ECF No. 21, PageID.85-86.)

Silva did not respond to Defendants' motion.  However, Silva did address the exhaustion issue in his complaint.  There, Silva averred that on November 5, 2020, he attempted to file a Step I grievance against Defendants for acting with deliberate indifference to his serious medical needs by housing him with inmates who had tested positive for Covid-19.  (ECF No. 1, PageID.6.)  Silva said that the administration did not process this grievance, instead returning the grievance with a memorandum informing Silva that he could not grieve issues pertaining to the prisoner population as a whole.  (*Id.*)  Similarly, Silva said that on November 18, 2020, he filed a Step I grievance against Huss for failing to test her staff for Covid-19, causing a mass outbreak in the prison.  This time, the grievance was processed but was ultimately rejected as concerning a "non-grievable" issue.  (*Id.*)

In moving for summary judgment, Defendants addressed the allegations in Silva's complaint by arguing: (1) that there is "no evidence" that Silva submitted the November 5, 2020 grievance, (2) that Silva did not appeal the November 5, 2020

grievance through Step III of the grievance process, (3) that the unnumbered grievance attached to Silva's complaint is unrelated to Silva's present claim, and (4) that Silva did not appeal the November 18, 2020 grievance through all three steps of the grievance process.  (ECF No. 21, PageID.86-87.)

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment.  Although Silva did not appeal any relevant grievances through Step III of the MDOC's grievance process, it is the undersigned's opinion that Silva's verified complaint creates genuine issues of material fact as to whether the grievance process was available to Silva.

## II.    Factual Allegations

Silva says that in September of 2020, MBP staff began contracting Covid-19 and bringing it into the prison.  (ECF No. 1, PageID.2.)  At the time, Silva says that MBP administration was testing its prisoners for the virus, but not its staff. According to Silva, this led to a "mass outbreak" of the virus by October of 2020.  (*Id.*)

Silva says that in September of 2020 and early October of 2020, he was assigned to G-Unit at MBP.  (*Id.*)  He says that when prisoners began testing positive for Covid-19, they were not quarantined or otherwise separated from the rest of the prison population.  (*Id.*, PageID.3.)  When Silva asked Defendant PC Johnson why he was allowing prisoners who had Covid-19 to co-mingle with prisoners who did not have Covid-19, Johnson allegedly informed Silva that all MBP units "contained a mixture of negative and positive covid inmates . . . and that MBP was simply not equipped to comply with the MDOC covid protocol."    When Silva asked to be

quarantined or transferred to avoid contracting the virus, Johnson allegedly told Silva that he would not transfer Silva because he would then have to transfer all prisoners who had not tested positive for Covid-19.  Johnson told Silva that he would "have to [tough] it out."  (*Id.*)

Shortly after he spoke to Johnson about a potential transfer, Silva says that he received a Class I Misconduct and was reassigned to D-Unit at MBP.  (*Id.*)  Silva says that he was further exposed to prisoners who had tested positive for Covid-19 in D-Unit.  Silva says that he talked to RUM Erickson about the exposure, and that RUM Erickson told him that there was nothing that she could do to separate the prisoners because every housing unit contained prisoners who had tested positive for the virus.  (*Id.*, PageID.4.)  Erickson also told Silva that although she had the authority to transfer prisoners, she could not afford to waste the resources necessary to transfer Silva under the current circumstances.  When Silva asked Erickson whether she would report the inhumane conditions at MBP, Erickson responded: "Not if I want to keep my job."  (*Id.*)

Soon after his conversation with RUM Erickson, Silva says that the inmate in the cell neighboring his tested positive for Covid-19.  (*Id.*)  Silva says that he was not moved to a new cell, and eventually tested positive for the virus himself.  On approximately October 23, 2020, after testing positive for Covid-19, Silva says that he spoke to Defendants Huss, Tasson, and Dahl.  (*Id.*)

Silva says that when he spoke to Warden Huss, Huss told him that "even though MBP was not equipped to comport with MDOC protocol," MBP was not

transferring prisoners.  (*Id.*)  Additionally, Huss told Silva it would be "too much of a hassle on staff" to reorganize the housing units in order to separate out prisoners who had tested positive for Covid-19.  Huss allegedly suggested that "it would be better" for everyone to contract Covid-19 and "get it over with so they could build up an immunity to the virus."  (*Id.*)  Silva says that when he tried to point to MDOC protocol, Huss stated: "I'm so tired of hearing you guys quote all this MDOC protocol crap, it is what it is, we're unable to separate all of you guys no matter what policies you guys quote, get over it and get well, Mr. Silva." (*Id.*, PageID.5.)

Later, Silva addressed his concerns with DW Tasson and ADW Dahl.  Tasson and Dahl allegedly responded in much the same manner, informing Silva that although they had the authority to transfer him, they would not.  (*Id.*)  Tasson allegedly cited the decision of MBP administration as his reason for refusing to transfer Silva, and Dahl allegedly cited the same, adding that transferring inmates to prevent Covid-19 exposure would require an immense amount of paperwork.  (*Id.*)

## III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.   Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on

---

[2]     If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

7

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to

informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").  However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V.   Analysis

As stated above, Defendants contend that Silva was required to exhaust the MDOC's three-step grievance process prior to filing suit. (ECF No. 21, PageID.83.) Defendants argue that Silva did not appeal any grievances through Step III of that process, and that Silva therefore failed to exhaust his administrative remedies as required by the PLRA. (*Id*., PageID.85-86.) The undersigned agrees that Silva did not appeal any relevant grievances through Step III of the MDOC's grievance process. However, the PLRA requires prisoners to exhaust *available* administrative remedies; in the opinion of the undersigned, there are genuine issues of material fact bearing on whether the grievance process was available.

---

[3]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

In his verified complaint, Silva says that he submitted two relevant grievances: a November 5, 2020 grievance complaining that Defendants were housing prisoners who had tested positive for Covid-19 together with prisoners who had not tested positive for Covid-19, and a November 18, 2020 grievance complaining that Huss failed to properly test her staff for Covid-19, resulting in a facility-wide outbreak. (ECF No. 1, PageID.6.)  Silva purported to attach these grievances to his complaint.

With respect to the first grievance attached to Silva's complaint, it seems that Silva made a mistake and included the wrong grievance.  The attached grievance was written in January of 2021, and complained about exposure to Covid-19 during strip searches conducted in January of 2021.  (ECF No. 1-1, PageID.11.)  Nevertheless, Silva's allegations that he attempted to file a relevant grievance on November 5, 2020, and that it was sent back to him as "non-grievable" are sufficient to create genuine issues of fact.

Moreover, Silva successfully attached the November 18, 2020 grievance to his complaint.  That grievance and its rejection are shown below:

12

MICHIGAN DEPARTMENT OF CORRECTIONS **RECEIVED**
PRISONER/PAROLEE GRIEVANCE

4835-4247 10/94
CSJ-247A

Date Received at Step I  12-2-2020   Grievance Number  DEC 02 2020  M3P20/20/8251271 B

Grievance Branch Office
Marquette

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| David Silva Jr. | 235123 | MBP | G=20 | Oct. 18 2020 | 11/18/2020 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? __NOV. 3rd__
If none, explain why.

I sent kite to Warden Erica Huss and Inspector Dahl, I also spoke with Unit ARUS

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.  Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

On the above date after finishing my 14 day quarantine PER CDC Guidlines. I discovered a greivance issue. During the course of this within the outbreak I had contracted the deadly Covid-19 Virus due to staff exposure. I was housed in segregation which meant that Delta block had been isolated due to disciplinary purposes, Meaning I had contracted the virus from a source beyond segregation. This Erica Huss and this administration violated MDOC policy PD.03.03.130 as well as my Eight Amend. Const. Rights. Based on Warden Erica Huss' failure to act and contain this outbreak, she placed my life in danger and I suffered pain and agony. As an older Latino Man I am considered to be of the high risk class which raised the morality rate and I could've ultimately died. All parties are being placed on notice.

*David Silva Jr.*
Grievant's Signature

RESPONSE (Grievant Interviewed?  ☐ Yes  ☒☒No    If No, give explanation. If resolved, explain resolution.)

Your grievance is being rejected because you are grieving the content of PD 03.02.130 *Prisoner/Parolee Grievances* (E) It is not specific to you but rather the prison population as a whole. Grievance rejected according to policy.

| | | | |
|---|---|---|---|
| *G Caron* | 12-4-2020 | *[signature]* | 12-4-2020 |
| Respondent's Signature | Date | Reviewer's Signature | Date |
| Glenn Caron | Grievance Coordinator | Jerry Hoult | A/ADW |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

(ECF No. 1-1, PageID.12.)   Here, Silva complained that MBP staff had failed to protect him from Covid-19 exposure in violation of his Eighth Amendment rights and

in violation of MDOC Policy Directive 03.03.130.  Prison staff responded by rejecting the grievance as pertaining to the content of a policy directive, and as concerning the prison population as a whole.[4]

As an initial matter, the undersigned notes that it is not clear that the rejection was proper; nowhere in Policy Directive 03.02.130 does it state that issues affecting the prison population as a whole are non-grievable.   Instead, Policy Directive 03.02.130 ¶ J(8) provides that: "A grievance shall be rejected by the Grievance Coordinator if . . . the prisoner is grieving content of the policy or procedure except as it was specifically applied to the grievant."  Silva was complaining about a violation of Policy Directive 03.03.130, not about its contents.  Nevertheless, Silva's grievance was rejected as non-grievable.

Defendants contend that after this rejection, Silva was obligated to appeal the rejection through Step III of the grievance process.  (ECF No. 21, PageID.87.)  After all, if the rejection was improper, perhaps MDOC staff would have recognized as much on appeal.  The problem is that this Court has repeatedly rejected Defendants' position.  *See Kelly v. Labelle*, No. 2:20-CV-00049, 2021 WL 2419569, at *5 (W.D. Mich. May 12, 2021) ("[Plaintiff] was caught in proverbial "Catch-22" situation.  First, the MDOC told him that he could not file a grievance on his excessive force and retaliatory assault claims because those claims were non-grievable; now, [Defendant]

---

[4]    Notably, MDOC staff rejected the grievance as concerning Policy Directive 03.02.130 *Prisoner/Parolee Grievances*; it plainly did not.  Instead, Silva's grievance complained of the violation of Policy Directive 03.03.130 *Humane Treatment and Living Conditions for Prisoners*.

asserts that [Plaintiff]'s complaint should be dismissed because he failed pursue his grievance all the way through Step III."), *R&R adopted*, No. 2:20-CV-49, 2021 WL 2417104 (W.D. Mich. June 14, 2021); *Valdez v. Bray*, No. 2:21-CV-58, 2022 WL 3587883, at *4 (W.D. Mich. July 22, 2022) ("[F]or the MDOC to instruct a prisoner that his claims fall outside of its grievance procedure and then assert that the claims are barred from litigation because the prisoner did not exhaust the same procedure belies logic."), *R&R adopted*, No. 2:21-CV-58, 2022 WL 3586244 (W.D. Mich. Aug. 22, 2022).

Accordingly, the undersigned finds that there are genuine issues of material fact bearing on the availability of the grievance process in this case. Despite Defendants' contention that the Silva had to exhaust the MDOC's grievance process prior to filing suit, Silva's verified complaint and the grievance attached thereto suggest that Silva attempted to exhaust the grievance process but that the grievance process was unavailable to him.

## VI. Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment. Although Silva did not appeal any relevant grievances through Step III of the MDOC's grievance process, it is the undersigned's opinion that Silva's verified complaint creates genuine issues of material fact as to whether the grievance process was available to Silva to exhaust his present claims.

If the Court accepts this recommendation, Silva's Eighth Amendment claims

against Defendants for failing to protect Silva from exposure to the Covid-19 virus will remain.

Dated:   April 11, 2023                                    /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).